**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANTONIO BURRELL,**

                                      **Case No. 2:17-cv-659**

      **Petitioner,**                    **Judge Algenon L. Marbley**

                                        **Magistrate Judge Chelsey M. Vascura**

      **v.**

**WARDEN, LONDON
CORRECTIONAL INSTITUTION,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Traverse,[1] and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Twelfth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On August 21, 2015, the Fayette County Grand Jury returned an indictment charging Burrell with attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A), a first-degree felony, and improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony. Both charges also included firearm and forfeiture specifications.FN1
>
> FN1: Burrell was also charged and subsequently convicted of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.16(A)(1), a second-degree felony, and having weapons under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. Burrell did not appeal his conviction as it relates to these charges, nor did he appeal the firearm and

---

[1] On December 27, 2017, and January 4, 2018, Petitioner filed a Traverse or Reply to the Return of Writ (ECF Nos. 7, 8); however, these documents appear to be duplicative.

forfeiture specifications. This court will therefore limit its review accordingly.

The charges stemmed from allegations that during the early morning hours of August 10, 2015, Burrell was driven to a nearby home by his girlfriend with a loaded shotgun in the car after he got into a dispute with a neighbor over two packs of cigarettes. Once there, Burrell exited the vehicle and fired five shots into the home with the purpose and intent to kill a woman inside, L.G.-R. It is undisputed that although the home was hit several times causing extensive damage to both the interior and exterior of the home, L.G.-R. did not suffer any physical injuries. Burrell and L.G.-R. live on the same street approximately seven houses apart.

The matter ultimately proceeded to a one-day jury trial held on April 13, 2016. At trial, L.G.-R. testified a "super drunk" Burrell called her several times during the early morning hours of August 10, 2015 accusing her of stealing two packs of cigarettes from his freezer. As part of these calls, L.G.-R. testified Burrell threatened to come down to her house to fight in order to resolve the dispute. Shortly after receiving this threat, L.G.-R. testified she heard a loud noise coming from the front of her house. Believing that Burrell may have thrown a rock at her house, L.G.-R. testified that she looked outside her bedroom window where she saw Burrell leaning against a car holding a shotgun.

Continuing, L.G.-R. then testified she heard a bang and "saw the sparks come from the end of the gun." According to L.G.-R., Burrell shot the front of her one-story home a total of five times. Photographs of the damage depict all three of the windows on the front of the home shot out. Photographs also show multiple holes caused by the shotgun pellets on the interior of the home. As one officer testified, the shots appeared "sporadic throughout the house. * * * Some were higher, some were lower," with some entering the home below the so-called "six foot line." After the shooting stopped, L.G.-R. testified she called 9–1–1 and watched Burrell get back into the vehicle and flee down an adjacent street. Five shotgun shell casings were later discovered in the middle of street directly in front of L.G.-R.'s home.

In addition to L.G.-R.'s testimony, the state presented testimony from several police officers who testified the vehicle in which Burrell fled from the scene was driven by Burrell's girlfriend, Misty Carver. Carver was pulled over by police a short distance from the scene of the shooting. Once stopped, the police located an

unloaded shotgun in the vehicle. Burrell, however, was not in the vehicle having already been dropped off at his house by Carver.

Once Burrell was dropped off, Burrell called Carver's sister, B.R., from Carver's phone asking if Carver was at her house. Upon learning Carver was not at B.R.'s house, Burrell asked if she could come pick him up.

B.R. testified that after agreeing to pick up Burrell, she asked Burrell what was going on, to which Burrell responded, "they wanted to play hard so I showed them hard."

Burrell did not testify at trial. However, according to his statement to police, Burrell admitted to putting the shotgun in the car and going "down to fight them" after supposedly learning L.G.-R. and her boyfriend had "heat too." Specifically, Burrell told police that he woke up his girlfriend and asked her to drive him to L.G.-R.'s house because he had been drinking. Once there, Burrell stated he fired the shotgun multiple times at L.G.-R.'s home after seeing L.G.-R. "flash a little gun * * * and boom, that's when the fire happened." Explaining the incident further, Burrell stated "everything just happened so fast. When [L .G.-R. and her boyfriend] flashed that motherf* *king gun that's when I got out [of the car] and like boom. And then it went down from there." Burrell also claimed that he had "aimed high" so that he would not hurt anyone, and stressed that he would never physically harm a woman even though he could have "easily beat her up."

Following trial, the jury returned a verdict finding Burrell guilty of the attempted aggravated murder of L.G.-R., as well as improperly handling a firearm in a motor vehicle. The trial court then held a sentencing hearing and sentenced Burrell to serve a total of 20 years in prison. Burrell now appeals from his conviction, raising four assignments of error for review.

Assignment of Error No. 1:

[BURRELL'S] CONVICTION FOR IMPROPERLY HANDLING A FIREARM IN A MOTOR VEHICLE WAS BASED ON INSUFFICIENT EVIDENCE.

*       *       *

Assignment of Error No. 2:

[BURRELL'S] CONVICTION FOR ATTEMPTED AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*     *     *

Assignment of Error No. 3:

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ISSUED JURY INSTRUCTIONS FOR THE ATTEMPTED–AGGRAVATED–MURDER CHARGE THAT INCLUDED AN INSTRUCTION ON FORESEEABILITY.

*     *     *

Assignment of Error No. 4:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTIONS.

*State v. Burrell*, No. CA2016-04-005, 2016 WL 7626283, at *1-7 (Ohio App. 12th Dist. Dec. 28, 2016). On December 28, 2016, the appellate court affirmed the judgment of the trial court. *Id.* On June 21, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Burrell*, 149 Ohio St.3d 1433 (2017).

On July 26, 2017, Petitioner filed this *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence is constitutionally insufficient to sustain his conviction on improperly handling a firearm in a motor vehicle (claim one); that his conviction on attempted aggravated murder was against the manifest weight of the evidence (claim two); that the trial court committed "plain error" when it issued jury instructions on attempted aggravated murder that included foreseeability (claim three); and that he was denied the effective assistance of counsel based on his attorney's failure to object (claim four). It is the position of the Respondent that Petitioner's claims are procedurally defaulted or fail to provide a basis for relief.

**Procedural Default: Claim Three**

It is the position of the Respondent that Petitioner has procedurally defaulted claim three. Congress has provided that a state prisoner who is in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)), *cert. denied*, 544 U.S. 928 (2005). One aspect of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims

being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, courts undertake a four-part analysis when a state argues that a federal habeas claim is waived by virtue of a petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a petitioner did not comply with a state procedural rule and that the rule was an adequate and independent state ground, then the petitioner must demonstrate cause for his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *LeRoy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir.), *cert. denied sub. nom. LeRoy v. Morris*, 474 U.S. 831 (1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Constitutionally ineffective counsel may constitute cause to excuse a procedural default.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective

assistance of counsel claim generally must "'be presented to the state courts as an independent

claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at

452 (quoting *Murray,* 477 U.S. at 479). Before counsel's ineffectiveness will constitute cause,

"that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore

must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665,

668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if the claim is procedurally defaulted, a

petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the

ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court

explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the
> procedural-default doctrine in *Coleman:* "In the absence of the
> independent and adequate state ground doctrine in federal habeas,
> habeas petitioners would be able to avoid the exhaustion
> requirement by defaulting their federal claims in state court. The
> independent and adequate state ground doctrine ensures that the
> States' interest in correcting their own mistakes is respected in all
> federal habeas cases." 501 U.S. at 732 [ ]. We again considered the
> interplay between exhaustion and procedural default last Term in
> *O'Sullivan v. Boerckel*, 526 U.S. 838 [ ] (1999), concluding that the
> latter doctrine was necessary to " 'protect the integrity' of the
> federal exhaustion rule." *Id.* at 848 [ ] (STEVENS, J., dissenting).
> The purposes of the exhaustion requirement, we said, would be
> utterly defeated if the prisoner were able to obtain federal habeas
> review simply by " 'letting the time run' " so that state remedies
> were no longer available. *Id.* at 848 [ ]. Those purposes would be
> no less frustrated were we to allow federal review to a prisoner
> who had presented his claim to the state court, but in such a
> manner that the state court could not, consistent with its own
> procedural rules, have entertained it. In such circumstances, though
> the prisoner would have "concededly exhausted his state
> remedies," it could hardly be said that, as comity and federalism

require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.* at 854 [ ] (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204 [ ] (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96), *cert. denied sub. nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015).

In claim three, Petitioner asserts that he was denied a fair trial due to the trial court's misleading and improper jury instruction indicating that Petitioner was responsible "for the nature and foreseeable results" of his conduct. *See Traverse* (ECF No. 7, PAGEID# 409-10.) He also asserts that the trial court's jury instruction amounted to plain error. However, this Court will not address this latter issue, because it challenges the state court's application of state law, and is not cognizable on federal habeas corpus review. *See Baston v. Bagley*, 282 F. Supp. 2d 655, 666 (N.D. Ohio Sept. 12, 2003) (citing *Lewis v. Jeffers*, 497 U.S. 764, 782 (1990); *Bugh v. Mitchell*, 329 F.3d 496, 511 (6th Cir. 2003)). Further, Petitioner waived his claim of improper jury instructions by failing to object. The state appellate court explicitly conducted only a plain error review. *Burrell*, 2016 WL 7626283, at *5.

Petitioner has thereby procedurally defaulted this claim for review in these proceedings. *See Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *12 (N.D. Ohio Feb. 9, 2017) (citing *Durr v. McLaren*, No. 15-1346, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015)). The United

States Court of Appeals for the Sixth Circuit has held that Ohio's contemporaneous-objection rule constitutes an adequate and independent state ground to preclude federal habeas review. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334-35 (6th Cir.) (citation omitted), *cert. denied sub nom. Wogenstahl v. Robinson*, 568 U.S. 902 (2012); *Awkal v. Mitchell*, 613 F.3d 629, 648-49 (6th Cir. 2010), *cert. denied*, 562 U.S. 1183 (2011). The state appellate court's plain error review does not constitute a waiver of the state's procedural default rules. *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006), *cert. denied sub nom. Keith v. Houk*, 549 U.S. 1308 (2007).

Thus, Petitioner has waived claim three. He may still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea,* 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).

The Court presumes that Petitioner asserts, as cause for this procedural default, the denial of the effective assistance of counsel. He raises this same issue in habeas corpus claim four. The Court will address the merits of this claim in order to determine whether Petitioner can establish cause and prejudice for his procedural default of claim three.

The state appellate court denied the claim in relevant part as follows:

Burrell argues the trial court committed plain error by instructing the jury on the attempted aggravated murder charge that Burrell was responsible for the natural and foreseeable results of his conduct as part of its instruction on causation. In support of this claim, Burrell challenges the following instruction as it relates to the charge of attempted aggravated murder:

> Causation is an essential element of the offense. Cause is an act which in a natural continuous sequence directly produces the physical harm and without which it would not have occurred.

> The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the act.

(Emphasis sic.)

According to Burrell, by including the standard foreseeability instruction within its instructions on causation, the trial court impermissibly lowered the state's burden of proof that required the state to prove he acted purposefully with the intent to kill L.G.-R. before he could be found guilty of attempted aggravated murder. We disagree.

The Ohio Supreme Court has recognized that "the use of the foreseeability instruction in aggravated murder cases is questionable." *State v. Hanna*, 95 Ohio St.3d 285, 2002–Ohio–2221, ¶ 54, citing *State v. Burchfield*, 66 Ohio St.3d 261, 263 (1993); *State v. Goodwin*, 84 Ohio St.3d 331, 346 (1999). However, the Ohio Supreme Court has also determined that "it is not plain error to give the standard foreseeability instruction in a murder case where the instructions as a whole make clear that the jury must find purpose to kill in order to convict." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, ¶ 98; *State v. Phillips*, 74 Ohio St.3d 72, 100 (1995)

* * *

Here, prior to providing the jury with the standard foreseeability instruction, the trial court explicitly instructed the jury on the state's burden of proof and the requirement that the state prove Burrell acted purposefully with the intent to kill L.G.-R. before he could be found guilty of attempted aggravated murder.

Specifically, the trial court instructed the jury in regards to purpose and intent as follows:

Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 10th day of August, 2015, and in Fayette County, Ohio, the defendant purposely engaged in conduct which, if successful, would have resulted in the death of another.

> ***Criminal attempt*** is when one purposely does anything which is an act constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.
>
> The offense of **AGGRAVATED MURDER** is committed when one purposely, with prior calculation and design, causes the death of another.
>
> ***Purpose*** to commit murder or to kill another is an essential element of the crime of **AGGRAVATED MURDER**. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to kill another. Purpose is a decision of the mind to do an act with a conscious objective of engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.

(Emphasis sic.)

After a thorough review of the record, we find the instructions provided to the jury, when taken as a whole, make clear that the jury was required to find Burrell acted purposefully with the intent to kill L.G.-R. before it could find him guilty of attempted aggravated murder. *See, e.g., State v. Williams*, 99 Ohio St.3d 493, 2003–Ohio–4396, ¶ 105 (finding no plain error where trial court included the standard foreseeability instruction in an aggravated murder case because the trial court also instructed the jury on the requirement of purpose and intent to kill prior to the causation language), reversed on other grounds on reconsideration, 103 Ohio St.3d 112, 2004–Ohio–4747.

&ldquo; &lsquo;The trial court extensively instructed the jury on the requirement of purpose and intent prior to the causation language.&rsquo; &rdquo; *Id*., quoting *Goodwin*, 84 Ohio St.3d at 346. Therefore, just like the Ohio Supreme Court in *Williams*, we see nothing in the record that would indicate the trial court's subsequent inclusion of the standard foreseeability instruction impermissibly lowered the state's burden of proof on the charge of attempted aggravated murder so as to constitute a reversible error. Rather, the instructions, when taken as a whole, plainly instructed the jury that it was required to find Burrell acted purposefully with the intent to kill L.G.-R. before it could find him guilty of attempted aggravated murder. Accordingly, because we can find no error with the trial court's jury instructions, let alone plain error, Burrell's third assignment of error is overruled.

Assignment of Error No. 4:

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTIONS.

In his fourth assignment of error, Burrell argues he received ineffective assistance of counsel when his trial counsel failed to object to the trial court providing the jury with the standard foreseeability instruction within its instructions on causation as it relates to the attempted aggravated murder charge. In light of our decision under Burrell's third assignment of error, we find no merit to Burrell's ineffective assistance of counsel claim. Therefore, Burrell's fourth assignment of error is overruled.

*State v. Burrell*, 2016 WL 7626283, at *5-7.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S.

Ct. 680 (2013).  A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted); citing *Strickland*, 466 U.S. at 687), *cert. denied,* 135 S. Ct. 122 (2014).  To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687.  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Petitioner has failed to meet the two-prong *Strickland* test.  As discussed above, the appellate court concluded that the jury instructions, when viewed as a whole, complied with Ohio law, and could not establish prejudice.  "[I]t is not for this court to question the state court's interpretation of its own law" here.  *See Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir. 2000) (citing *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988), *cert denied*, 488 U.S. 1011 (1989)), *cert. denied*, 532 U.S. 989 (2001).

Petitioner has failed to establish the denial of the effective assistance of counsel.  He has likewise failed to establish cause and prejudice for his procedural default of claim three.

**Insufficiency of the Evidence; Claims One and Two**

In claim one, Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction on improperly handling a firearm in a motor vehicle, due to the lack of evidence regarding the condition or location of the firearm while he was in the car and the lack of

evidence indicating that the firearm was loaded. The state appellate court rejected this claim as

follows:

> Burrell argues his conviction for improperly handling of a firearm in a motor vehicle was not supported by sufficient evidence. We disagree.
>
> When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015–05–046, 2015–Ohio–5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012–06–012, 2013–Ohio–5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006–01–007, 2007–Ohio–2298, ¶ 33. When evaluating the sufficiency of the evidence, this court must "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland,* 140 Ohio St.3d 73, 2014–Ohio–1966, ¶ 132.
>
> Burrell was convicted of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B). Pursuant to that statute, "[n]o person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." In order for a person to "have" a gun under R.C. 2923.16(B), that person must either actually or constructively possess it. *In re I.L.J.F.*, 12th Dist. Butler No. CA2014–12–258, 2015–Ohio–2823, ¶ 31, citing *State v. Banks*, 10th Dist. Franklin No. 11AP–592, 2012–Ohio–1420, ¶ 5.
>
> Burrell argues his conviction for improperly handling of a firearm in a motor vehicle was not supported by sufficient evidence because there was no evidence as to "the condition or location of the firearm" while he was inside the vehicle. However, this ignores Burrell's own statement to police as it relates to his version of events that "[w]hen [L.G.-R. and her boyfriend] flashed that motherf* *king gun that's when I got out [of the car] and like

> boom. And then it went down from there." Burrell's statement,
> which was admitted into evidence without objection, clearly
> indicates he had a loaded shotgun in the vehicle that was
> immediately accessible to him without him leaving the vehicle.
> This statement provides sufficient evidence for the jury, as the trier
> of fact, to establish the necessary elements of the offense beyond a
> reasonable doubt. Therefore, because we find there was sufficient
> evidence to support Burrell's conviction for improperly handling a
> firearm in a motor vehicle, Burrell's first assignment of error is
> overruled.

*State v. Burrell*, 2016 WL 7626283, at *2-3.

Before a criminal defendant can be convicted consistent with the United States

Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining

whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court

must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S.

277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not required to "rule out

every hypothesis except that of guilt." *Id.* (quoting *Jackson,* 443 U.S. at 326). "[A] reviewing

court 'faced with a record that supports conflicting inferences must presume—even if it does not

appear on the record—that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution.'" *Id.*

Moreover, federal habeas courts must afford a "double layer" of deference to state court

determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d

191, 205 (6th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010), deference must be given, first, to

the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether

"viewing the trial testimony and exhibits in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no

rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.), *cert. denied*, 562 U.S. 868 (2010). This is a substantial hurdle for a habeas petitioner to overcome. For the reasons addressed by the state appellate court, this Court is not persuaded that Petitioner has done so here. "A conviction may be sustained based upon nothing more than circumstantial evidence." *Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)); *see also Gipson v. Sheldon*, 659 F. App'x 871, 877 (6th Cir. 2016) ("Circumstantial evidence is sufficient to support a conviction as long as the jury is convinced beyond a reasonable doubt.") (citing *Holland v. United States*, 348 U.S. 121, 139–40 (1954); *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008) (and cases cited therein), *cert. denied*, 558 U.S. 845 (2009)). Moreover, "a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence." *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002) (citing *Jamison v. Collins*, 100 F. Supp. 2d 647, 705 (S.D. Ohio 2000)). Thus, [a] conviction may be based upon circumstantial evidence as well as inferences based upon the evidence." *Id.* at 647-48 (citing *Gonzalez v. Reiner*, 177 F. Supp. 2d 211, 218 (S.D.N.Y. 2001) (quoting *United States v. Strauss*, 999 F.2d 692, 696 (2nd Cir. 1993)). Here, in view of Petitioner's statements regarding the events at issue, the jury could have reasonably inferred that Petitioner grabbed his firearm from the car and began shooting. *Jackson* does not require the prosecution to rule out every hypothesis except that of guilt. *See Gipson*, 659 F. App'x at 881.

Claim one is without merit.

In claim two, Petitioner asserts that his conviction on attempted aggravated murder was against the manifest weight of the evidence. This claim fails to provide a basis for federal habeas corpus relief. *See Taylor v. Warden, Lebanon Corr. Inst.*, No. 2:16-cv-237, 2017 WL 1163858, at \*10 (S.D. Ohio Mar. 29, 2017) (citations omitted). Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ct. App. 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Because a federal habeas court does not function as an additional state appellate court vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

However, Petitioner argues that the evidence is constitutionally insufficient to sustain his conviction on attempted aggravated murder because there was no physical evidence linking him to the crime and no evidence to establish his intent. (*See Traverse*, ECF No. 7, PAGEID# 402-03.) Petitioner argues that Lindsey's testimony that she was in the house at the time he fired the shots is not credible and that the evidence shows that he lacked the intent to injure anyone because he aimed high. (PAGEID# 406-07.)

The United States Court of Appeals for the Sixth Circuit has held that a Petitioner preserves a claim of insufficiency of the evidence for federal habeas corpus review even if he raised the issue in the state courts solely in the context of a claim that his conviction was against

17

the manifest weight of the evidence. *See Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007).

The Sixth Circuit reasoned:

> [T]he sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence. The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee,* 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Id*. at 765; *see also Bryant v. Turner*, No. 2:15-cv-02929, 2016 WL 5930919, at *4–5 (S.D. Ohio Oct. 12, 2016) (citing *Taylor v. Brunsman*, No. 3:12CV800, 2014 WL 4113320, at *14 (N.D. Ohio Aug. 20, 2014)).   Therefore, the Court will also address the merits of Petitioner's claim that the evidence is constitutionally insufficient to sustain his conviction on attempted aggravated murder.

The state appellate court rejected this claim in relevant part as follows:

> Burrell was convicted of attempted aggravated murder in violation of R.C. 2903.01(A) and 2923.02(A). Aggravated murder in violation of R.C. 2903.01(A), the underlying offense upon which this attempt charge was predicated, provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." As defined by R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

Pursuant to R.C. 2923.02(A), which defines criminal attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In other words, a criminal attempt is complete when a person's acts constitute a substantial step in a sequence of events designed to result in the perpetration of a crime. *State v. Clements*, 12th Dist. Butler No. CA2009–11–277, 2010–Ohio–4801, ¶ 20, citing *State v. Green*, 122 Ohio App.3d 566, 569–570 (12th Dist.1997). As defined by the Ohio Supreme Court, a "substantial step" involves conduct that is " 'strongly corroborative of the actor's criminal purpose.' " *State v. Group*, 98 Ohio St.3d 248, 2002–Ohio–7247, ¶ 95, quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, judgment vacated on other grounds, 438 U.S. 910, 98 S.Ct. 3133 (1978).

Burrell argues his conviction for attempted aggravated murder was against the manifest weight of the evidence because the evidence indicates he did not act purposefully with the intent to kill L.G.-R. when he fired multiple shotgun shots into her home. In support of this claim, Burrell argues that L.G.-R.'s testimony that she was inside the house at the time of the shooting was not credible. Instead, Burrell claims the evidence actually proves L.G.-R. was "outside of the house arguing with him prior to the shotgun being fired."

The jury, as the trier of fact, clearly found Burrell's statements to police regarding L.G.-R.'s whereabouts at the time of the shooting lacked credibility. As noted above, after hearing a loud noise coming from the front of her house, L.G.-R. specifically testified that she looked outside her bedroom window where she saw Burrell leaning against a car holding a shotgun. L.G.-R. then testified that she heard a bang and "saw the sparks come from the end of the gun." It is well-established that it is the trier of fact who makes determinations of credibility and the weight to be given to the evidence. *State v. Erickson*, 12th Dist. Warren No. CA2014–10–131, 2015–Ohio–2086, ¶ 42, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. A conviction is not against the manifest weight of the evidence merely because the trier of fact believes the testimony of a witness for the state. *State v. Siney*, 12th Dist. Warren No. CA2004–04–044, 2005–Ohio–1081, ¶ 60.

Moreover, although Burrell told police he "aimed high" so as to not hurt anyone, and further stressed that he would never

physically harm a woman, the evidence indicates that Burrell shot out each of the three windows on the front of L.G.-R.'s one-story home while L.G.-R. was inside. This caused extensive damage to both the interior and exterior of the home. Again, as one officer testified, the shots appeared "sporadic throughout the house. * * * Some were higher, some were lower," with some entering the home below the so-called "six foot line."

As noted by the Ohio Supreme Court, " 'a firearm is an inherently dangerous instrumentality, the use of which is likely to produce death.' " *State v. Dunlap*, 73 Ohio St.3d 308, 316 (1995), quoting *State v. Widner*, 69 Ohio St.2d 267, 270 (1982). In turn, Burrell's actions of firing a shotgun five times into L.G.-R.'s home while L.G.-R. was inside portrayed a substantial, but fortunately ineffectual, step towards causing L.G.-R.'s death. To claim otherwise is simply incorrect and improperly downplays the seriousness of Burrell's conduct. Therefore, because Burrell's attempted aggravated murder conviction was not against the manifest weight of the evidence, Burrell's second assignment of error is overruled.

*State v. Burrell*, 2016 WL 7626283, at *3-5.

Again, for the reasons set forth by the state appellate court, and when viewing all of the evidence in the light most favorable to the prosecution, this Court agrees that the evidence is constitutionally sufficient to sustain Petitioner's conviction on attempted aggravated murder. "It is well-settled in Ohio that the specific intention to kill may be inferred from the fact that a firearm was used to commit the offense because a firearm is 'an inherently dangerous instrumentality, the use of which is reasonably likely to produce death.'" *Crawford v. Warden, Warren Corr. Inst.*, No. 1:10-cv-541, 2011 WL 5307408, at *15 (S.D. Ohio Sept. 29, 2011) (quoting *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025, 1028 (Ohio 1982)) (additional citation omitted).

Claim two is without merit.

**Recommended Disposition**

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE